UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| In re STELLENT, INC. SECURITIES LITIGATION | ) Master File No. CV-03-4384 RHK/AJB |
| | ) |
| | ) <u>CLASS ACTION</u> |
| This Document Relates To: | ) |
| | ) MEMORANDUM OF POINTS AND |
| ALL ACTIONS. | ) AUTHORITIES IN SUPPORT OF |
| | ) MOTION FOR FINAL APPROVAL OF |
| | ) SETTLEMENT AND PLAN OF |
| | ) ALLOCATION OF SETTLEMENT |
| | ) PROCEEDS |

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................... 1

II.   FACTUAL BACKGROUND AND HISTORY OF THE LITIGATION ................ 3

III.  THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION
      SETTLEMENTS ...................................................................................... 3

IV.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE .................... 6

      A.   The Settlement Appropriately Balances the Risks of Litigation and
           the Benefit to the Settlement Class of a Certain Recovery ........................ 6

           1.   Continued Litigation Poses Substantial Risk in Establishing
                Liability and Damages ........................................................................ 6

           2.   Balancing the Certainty of an Immediate Recovery Against
                the Complexity, Expense and Likely Duration of Trial Favors
                Settlement ...................................................................................... 12

      B.   The Parties Have Engaged in Sufficient Pretrial Proceedings to
           Identify the Strengths and Weaknesses of Their Cases ............................ 15

      C.   The Recommendations of Experienced Counsel Heavily Favor
           Approval of the Settlement ...................................................................... 17

      D.   The Reaction of the Settlement Class Supports Approval of the
           Settlement .............................................................................................. 18

V.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND
      ADEQUATE .......................................................................................... 18

VI.   CONCLUSION ...................................................................................... 22

## TABLE OF AUTHORITIES

**Page**

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ............................................................................. 14

*Backman v. Polaroid Corp.*,
    910 F.2d 10 (1st Cir. 1990) ................................................................................. 11

*Beecher v. Able*,
    575 F.2d 1010 (2d Cir. 1978) .............................................................................. 19

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
    603 F.2d 263 (2d Cir. 1979) ............................................................................... 11

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ............................................................................. 18

*DeBoer v. Mellon Mortgage Co.*,
    64 F.3d 1171 (8th Cir. 1995) ............................................................................ 4, 13

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ............................................................................. 5, 18

*Dura Pharms, Inc. v. Broudo*,
    125 S. Ct. 1627 (2005) ......................................................................................... 9

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980),
    *aff'd*, 661 F.2d 939 (9th Cir. 1981) ............................................................ 15, 16, 17

*Employee Benefit Plans*,
    No. 3-92-708, 1993 U.S. Dist. LEXIS 21226
    (D. Minn. June 2, 1993) ....................................................................... 12, 15, 17, 18

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976) ........................................................................................... 6, 7

*Fisher Bros. v. Cambridge-Lee Indus.*,
    630 F. Supp. 482 (E.D. Pa. 1985) ....................................................................... 17

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ......................................................................... 6, 12, 16

Page

*Grunin v. Int'l House of Pancakes,*
    513 F.2d 114 (8th Cir. 1975) ...................................................................... 4, 6, 12

*Harris v. Union Elec. Co.,*
    787 F.2d 355 (8th Cir. 1986) ...................................................................... 6

*Holden v. Burlington N., Inc.,*
    665 F. Supp. 1398 (D. Minn. 1987) .......................................................... 5, 15

*In re Apple Computer Sec. Litig.,*
    No. C-84-20148(A)-JW, 1991
    U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) ................................. 11

*In re Chambers Dev. Sec. Litig.,*
    912 F. Supp. 822 (W.D. Pa. 1995) ........................................................... 14

*In re Chicken Antitrust Litig. Am. Poultry,*
    669 F.2d 228 (5th Cir. 1982) ..................................................................... 19

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,*
    410 F. Supp. 659 (D. Minn. 1974) ............................................................ 5, 15, 17

*In re Gulf Oil/Cities Serv. Tender Offer Litig.,*
    142 F.R.D. 588 (S.D.N.Y. 1992) .............................................................. 19

*In re Ikon Office Solutions, Inc.,*
    194 F.R.D. 166 (E.D. Pa. 2000) ................................................................ 6, 18

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) ..................................................................... 16

*In re Shell Oil Refinery,*
    155 F.R.D. 552 (E.D. La. 1993) ............................................................... 15

*In re Warner Communications Sec. Litig.,*
    618 F. Supp. 735 (S.D.N.Y. 1985),
    *aff'd,* 798 F.2d 35 (2d Cir. 1986) ........................................................... 10, 14, 15, 16

*Justine Realty Co. v. Am. Nat'l Can Co.,*
    976 F.2d 385 (8th Cir. 1992) ..................................................................... 4

Page

*Lewis v. Newman,*
  59 F.R.D. 525 (S.D.N.Y. 1973) ................................................................................6

*Linney v. Cellular Alaska P'ship,*
  151 F.3d 1234 (9th Cir. 1998) ...............................................................................16

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1,*
  921 F.2d 1371 (8th Cir. 1990) .................................................................................4

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,*
  671 F. Supp. 819 (D. Minn. 1987).........................................................................5

*Milstein v. Huck,*
  600 F. Supp. 254 (E.D.N.Y. 1984) ........................................................................12

*Officers for Justice v. Civil Serv. Comm'n,*
  688 F.2d 615 (9th Cir. 1982) ...........................................................................12, 15

*Petrovic v. AMOCO Oil Co.,*
  200 F.3d 1140 (8th Cir. 1999) ................................................................4, 6, 13, 18

*Republic Nat'l Life Ins. Co. v. Beasley,*
  73 F.R.D. 658 (S.D.N.Y. 1977) ..............................................................................6

*Robbins v. Koger Props.,*
  116 F.3d 1441 (11th Cir. 1997) ......................................................................11, 14

*TSC Indus. v. Northway, Inc.,*
  426 U.S. 438 (1976)...........................................................................................6, 7

*Trans World Airlines, Inc. v. Hughes,*
  312 F. Supp. 478 (S.D.N.Y. 1970),
  *modified,* 449 F.2d 51 (2d Cir. 1971),
  *rev'd,* 409 U.S. 363 (1973)...................................................................................11

*Van Bronkhorst v. Safeco Corp.,*
  529 F.2d 943 (9th Cir. 1976) ..................................................................................4

Page

*Van Horn v. Trickey,*
    840 F.2d 604 (8th Cir. 1988) ..................................................................... 4

*W. Va. v. Chas. Pfizer & Co.,*
    314 F. Supp. 710 (S.D.N.Y. 1970),
    *aff'd,* 440 F.2d 1079 (2d Cir. 1971) ......................................................... 11

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir. 1982) ..................................................................... 16

*Welsch v. Gardebring,*
    667 F. Supp. 1284 (D. Minn. 1987)............................................... 6, 16, 17

*White v. NFL,*
    822 F. Supp. 1389 (D. Minn. 1993)............................................................ 19

*White v. NFL,*
    836 F. Supp. 1458 (D. Minn. 1993),
    *aff'd,* 41 F.3d 402 (8th Cir. 1994) ......................................................... 3, 4

*Williams v. First Nat'l Bank,*
    216 U.S. 582 (1910)................................................................................. 4

*Young v. Katz,*
    447 F.2d 431 (5th Cir. 1971) ................................................................. 12

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78j(b)....................................................................................................... 6, 7

Federal Rules of Civil Procedure
    Rule 23 ..................................................................................................... 18
    Rule 23(e) .............................................................................................. 1, 4

## SECONDARY AUTHORITIES

*Manual For Complex Litigation* (3d ed. 1995)
    §30.42 ....................................................................................................... 5

## I.   INTRODUCTION

Lead Plaintiffs respectfully submit this memorandum of points and authorities in support of their motion for final approval of the settlement of this securities class action for cash consideration of $12,000,000.  After more than two years of hard-fought litigation, Lead Plaintiffs and their counsel have achieved a settlement that they believe is an extremely favorable outcome for the Settlement Class and meets the applicable standards for approval under Rule 23(e) as set forth below.  The settlement is on behalf of a class of persons consisting of all persons who purchased Stellent Inc. ("Stellent") common stock and put and call options from October 2, 2001 through April 1, 2002, inclusive.

This case was carefully investigated and vigorously litigated since its commencement in July 2003.  The settlement was not achieved until Lead Plaintiffs, *inter alia*: (a) prepared a fact-specific consolidated complaint; (b) litigated a complicated motion to dismiss and successfully defeated defendants' challenges to the pleadings; (c) propounded extensive discovery requests on defendants and numerous third parties; (d) prepared to bring a motion to compel the production of documents; (e) conducted a detailed and extensive pre and post filing investigation; (f) located and interviewed some 36 witnesses including many former employees of Stellent and conducted discovery to confirm the reasonableness of the proposed settlement, including the review and analysis of internal company documents and transcripts of proceedings held by Stellent's special litigation committee during its investigation of the circumstances giving rise to this litigation; and (g) consulted with experts in materiality, loss causation, damages and accounting with respect to the issues in this case.

The parties also engaged in settlement negotiations over the course of nearly two months. These negotiations began only after plaintiffs' counsel had won the motion to dismiss and defendants knew that Lead Plaintiffs were ready to file a motion to compel the production of documents. Faced with the prospect of being forced to produce documents that could provide additional evidence of their fraud, defendants approached plaintiffs about the possibility of settlement. In February 2005, the parties reached an agreement to settle the litigation for $12,000,000.

Consequently, the settlement was reached after the substantial efforts of plaintiffs' counsel who zealously and efficiently litigated this case. It is the result of arm's-length negotiations between counsel experienced in class action securities litigation, each with a comprehensive understanding of the strengths and weaknesses of each party's respective claims and defenses. The settlement is an excellent result, given the factual legal hurdles and risks inherent in proving liability and damages as well as the uncertainty, delay and expense had this case proceeded to trial. The $12 million settlement represents one of the larger cash settlements achieved in a Minnesota securities class action and was achieved without the substantial expense, delay and uncertainty of trial.

The Court appointed Lead Plaintiffs – Central Laborers' Pension Fund and David Mowbray also support the settlement. Moreover, the reaction of Settlement Class Members further confirms the fairness of the settlement. Pursuant to an Order of this Court signed on September 6, 2005, copies of the Notice of Pendency and Proposed Settlement of Class Action ("Notice") were mailed to 7,343 potential Settlement Class Members and the Notice was posted on the Claims Administrator's website. A Summary Notice was published in

*Investor's Business Daily* on September 27, 2005. The last day to file objections to the settlement was October 28, 2005. *To date, no objections have been received.* Thus, the settlement appears to enjoy the overwhelming support of the Members of the Settlement Class.

As set forth herein and in the Herman Affidavit, based upon their investigation and analysis of the relevant facts and issues, the course of the litigation, the settlement negotiations and past experience in litigating similar class actions, Lead Plaintiffs and their counsel believe that this settlement is fair, reasonable and adequate and should be approved by this Court. Moreover, the Plan of Allocation tracks the damage theory of Lead Plaintiffs and is necessarily fair, reasonable and adequate.

## II.   FACTUAL BACKGROUND AND HISTORY OF THE LITIGATION

The procedural history of this litigation is detailed in the Affidavit of Dennis J. Herman in Support of Motion for: (1) Final Approval of Settlement; (2) Approval of the Plan of Allocation of Settlement Proceeds; and (3) Award of Attorneys' Fees and Reimbursement of Expenses("Herman Affidavit"), submitted herewith, and for the sake of brevity it is not repeated here. The Court is respectfully referred to the Herman Affidavit for a detailed discussion of the history and factual background of the litigation, the efforts of counsel in prosecuting this litigation and factors bearing on the reasonableness of the settlement, Plan of Allocation and counsel's request for an award of attorneys' fees and expenses.

## III.   THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well established that voluntary conciliation and settlement are the preferred means of dispute resolution. *White v. NFL*, 836 F. Supp. 1458, 1476 (D. Minn. 1993), *aff'd,*

41 F.3d 402 (8th Cir. 1994). "'[A] strong public policy favors agreements, and courts should approach them with a presumption in their favor.'" *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (quoting *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990)). It is beyond question that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class action suits. *See Justine Realty Co. v. Am. Nat'l Can Co.*, 976 F.2d 385, 391 (8th Cir. 1992); *White*, 836 F. Supp. at 1476; *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).[1]

Courts exercise "sound discretion" in approving a proposed settlement of a stockholders' class action under Rule 23(e) and must find that the proposed settlement is "'fair, reasonable, and adequate.'" *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988) (citation omitted); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975); *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995). However, in exercising its discretion, the court's role is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *See Petrovic*, 200 F.3d at 1148 (judges should not substitute their judgment for that of the litigants); *Grunin*, 513 F.2d at 123 ("'neither the trial court in approving the settlement nor this Court in reviewing the approval have the right or the duty

---

[1] *See also Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). The law favors the compromise of disputed claims.

to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute'") (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974)).  As explained below, applying these criteria demonstrates that the settlement warrants this Court's approval.

Moreover, "[t]he Court recognizes it is entitled to rely on the judgment of experienced counsel when evaluating the merits of a proposed class action settlement." *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1420 (D. Minn. 1987); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 667 (D. Minn. 1974) (the recommendation of experienced counsel is entitled to great weight).  Further, a presumption of reasonableness is warranted when the settlement is the product of arm's-length negotiations conducted by capable counsel who are well experienced in securities law litigation. *See M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Minn. 1987); *Manual For Complex Litigation* §30.42 (3d ed. 1995).  Here, it is the considered judgment of experienced counsel – after completion of an extensive investigation, a review of thousands of pages of internal company documents and hard-fought settlement discussions – that this settlement constitutes a fair, reasonable and adequate resolution of the case.

In light of the complex and contested factual and legal issues giving rise to questions as to whether a more favorable economic result could or would be accomplished through a costly and prolonged trial on the merits, the settlement warrants this Court's approval.

IV.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

A.    The Settlement Appropriately Balances the Risks of Litigation
and the Benefit to the Settlement Class of a Certain Recovery

To determine whether the proposed settlement is fair, reasonable and adequate, this

Court must balance the strength of Lead Plaintiffs' case against the continuing risks of

litigation, the benefits afforded to Members of the Settlement Class and the immediacy and

certainty of a recovery. *See Petrovic*, 200 F.3d at 1150; *Grunin*, 513 F.2d at 124; *Welsch v.*

*Gardebring*, 667 F. Supp. 1284, 1290 (D. Minn. 1987); *Girsh v. Jepson*, 521 F.2d 153, 157

(3d Cir. 1975); *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973); *see also Republic*

*Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658 (S.D.N.Y. 1977).   While courts have always

recognized that shareholder class action litigation is difficult and uncertain, "securities

actions have become more difficult from a plaintiff's perspective in the wake of the

PSLRA." *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).

A balance of these factors supports the approval of this settlement. The settlement is

an excellent recovery for the Settlement Class. Not only does it provide one of the larger

monetary recoveries achieved in this District, it eliminates the risk of not prevailing after

additional years of costly uncertain litigation.

1.    Continued Litigation Poses Substantial Risk in
Establishing Liability and Damages

To prevail on the §10(b) securities fraud claims, Lead Plaintiffs would have to prove,

*inter alia*, that the alleged misstatements were material, *see TSC Indus. v. Northway, Inc.*,

426 U.S. 438 (1976); *Harris v. Union Elec. Co.*, 787 F.2d 355 (8th Cir. 1986); and made

with scienter (actual knowledge or reckless disregard for the truth). *See Ernst & Ernst v.*

*Hochfelder*, 425 U.S. 185 (1976).  Accordingly, in order to prevail on the §10(b) claims,

Lead Plaintiffs would have to prove that defendants participated in the public dissemination

of misleading information, that the information was material to an investor in determining

whether to invest in Stellent securities, that the information materially affected the price of

the securities, and that defendants withheld information from the investing public either with

actual intent to deceive, manipulate or defraud, or that defendants recklessly disregarded

these facts and their consequences.  *See TSC Indus.*, 426 U.S. 438; *Ernst & Ernst*, 425 U.S.

185.

At trial, defendants would be expected to present testimony to support their contention

that they acted at all times in good faith and did not possess the required state of mind to be

held liable under the applicable securities laws.  Since many witnesses likely would be

aligned with defendants and, therefore, hostile to Lead Plaintiffs' case, Lead Plaintiffs would

have to rely primarily on documents and expert witnesses to establish their case.

While plaintiffs' counsel continue to believe in the strength of Lead Plaintiffs' case,

there were significant risks to continued litigation, which could significantly reduce, or

potentially eliminate, the amount of recovery by the Settlement Class.  For example,

defendants were likely to contend that the challenged accounting for various related parties

and other transactions had been reviewed and approved by Stellent's outside auditor, Grant

Thornton, LLP.  Hence, even if Lead Plaintiffs could establish that the accounting was

improper, they could have faced difficulty in establishing that the defendants were acting

with scienter in publishing false financial information, particularly if the jury believed that

the accounting rules were complicated or that their application to the facts of this case involved matters of judgment over which there could be reasonable disputes.

Similarly, there were issues over Stellent's disclosure of the extent of its related party activities, including its dealings with Active IQ. Defendants consistently argued that they disclosed Stellent's related party activities as soon as they were required to do so, in the company's 3Q02 10-Q report issued on February 14, 2002. While Lead Plaintiffs alleged this disclosure was incomplete and misleading, there was a risk that a jury could disagree, which would have potentially limited the amount of damages recoverable by the Settlement Class. As to the false financial projections, there was a significant risk that Lead Plaintiffs would be unable to satisfy the very stringent "actual knowledge" standard required to establish liability for false forward looking statements. If Lead Plaintiffs were unsuccessful in doing so, there was a very real risk that the amount of damages covered by the Settlement Class would be severely limited, particularly if the jury also believed that the February 14, 2002 related party disclosures were complete. Defendants would also argue that Lead Plaintiffs could not show a motive for the fraud or prove scienter because only one defendant, Mr. Olsen, sold any stock during the Class Period and his sales amounted to only 3% of his total holdings and were sold pursuant to a written trading plan, thus, potentially negating any strong inference of scienter.

The risks of establishing liability posed by the conflicting testimony and evidence would be exacerbated by the following risks inherent in all shareholder litigation:

(a)     the unpredictability of a lengthy and complex jury trial – witnesses could become unavailable or jurors could react to the evidence in unforeseen ways;

(b)     the risk that the jury would find that some or all of the alleged misrepresentations and omissions were not material during part or all of the Class Period; and

(c)     the risk that the jury would find that defendants reasonably believed in the appropriateness of their actions at the time and that plaintiffs failed to prove that defendants acted with scienter.

Thus, assuming Lead Plaintiffs survived defendants' anticipated motions for summary judgment, they nevertheless faced the significant risk that defendants' arguments might have found favor with a jury and resulted in Lead Plaintiffs losing at trial.

While Lead Plaintiffs believe that they would be able to establish that the Settlement Class suffered substantial damages as a result of defendants' conduct, they faced complex issues of proof in establishing the nature and extent of damages particularly in light of the Supreme Court's recent decision in *Dura Pharms, Inc. v. Broudo*, 125 S. Ct. 1627 (2005). In fact, because of *Dura*, damages presented one of the most significant risks in this case. Lead Plaintiffs alleged, and believe they would have been able to prove, that they incurred significant damages due to the slow leakage into the market of information hidden by defendants' fraud, especially during the latter part of the Class Period. However, this would have entailed the presentation of detailed and complicated expert testimony explaining the numerous price movements caused by the continuing, and in many cases inconsistent, disclosures into the market, which alternately inflated and deflated the price of Stellent's securities. Because of the nature of this testimony, there was a risk that the jury would not understand, or simply might not credit, the testimony of Lead Plaintiffs' experts, thereby

reducing or even eliminating the damages that could be recovered on behalf of the Settlement Class.

At a minimum, each side's experts would offer starkly contrasting testimony in support of their respective positions. It is expected that defendants' damage experts would opine that Stellent's common stock price was sensitive to factors outside the control of Stellent, and that the drop in the prices of Stellent's common stock price was due to a wide variety of factors unrelated to any actions by defendants. Thus, defendants' experts would contend that much or all of the losses experienced by Settlement Class Members were due to factors unrelated to defendants' conduct, thereby limiting or eliminating any potential recovery by the Settlement Class.

In addition, Lead Plaintiffs would have likely faced a motion *in limine* by defendants to preclude Lead Plaintiffs' damage experts' testimony under the *Daubert* test and risked a decision that a valuation model might not be admissible in evidence. Even if Lead Plaintiffs survived the *Daubert* motion, at trial, the loss causation and damage assessments of Lead Plaintiffs' and defendants' experts were sure to vary substantially, and in the end, this crucial element would be reduced to a "battle of experts." In the unavoidable "battle of experts," it is impossible to predict with any certainty which arguments would find favor with the jury. Conceivably, a jury could find that damages were only a small fraction of the amount that Lead Plaintiffs asserted them to be.[2] Thus, even if Lead Plaintiffs prevailed in establishing

---

[2]    *See In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately,

liability, additional risks would remain in establishing both loss causation and the existence of damages.

Finally, although Lead Plaintiffs' counsel believe that the case is meritorious and that Lead Plaintiffs would ultimately prevail in establishing both liability and damages, our experience has taught us that the above-mentioned factors can make the outcome of a trial extremely uncertain. Even with a judgment in hand, in today's corporate environment with many long-established companies filing for bankruptcy, there is no guarantee that a significant judgment entered years down the road would be collectable.

Even if Lead Plaintiffs were to prevail at trial, risks to the Settlement Class remain. For example, in *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991), the jury rendered a substantial verdict for plaintiffs after an extended trial. However, several weeks later the trial court overturned the verdict, entered judgment n.o.v. for the individual defendants and ordered a new trial with respect to the corporate defendant. In another case in the Middle District of Florida, the jury returned a verdict of approximately $81 million in favor of the plaintiff shareholder class. That verdict was reversed on appeal, leaving the plaintiff class with nothing. *See Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997).[3] Therefore, as this Court recognized in balancing

---

which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions").

[3]     *See also Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (the class won a jury verdict and a motion for j.n.o.v. was denied but, on appeal, the judgment was reversed and the case dismissed). *See also W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may

these factors, if you "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "'it [is] proper to take the bird in the hand instead of a prospective flock in the bush.'" *In re Employee Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 U.S. Dist. LEXIS 21226, at *15 (D. Minn. June 2, 1993) (citation omitted).

> **2. Balancing the Certainty of an Immediate Recovery Against the Complexity, Expense and Likely Duration of Trial Favors Settlement**

The immediacy and certainty of a recovery as well as the complexity, expense and likely duration of the litigation are factors for the court to balance in determining whether the proposed settlement is fair, reasonable and adequate. *See Employee Benefit Plans*, 1993 U.S. Dist. LEXIS 21226. *Grunin*, 513 F.2d at 124; *Girsh*, 521 F.2d at 157. Courts consistently have held that "[t]he expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Therefore, the present settlement must also be balanced against the expense of achieving a more favorable result at trial. *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971).

---

be of the outcome of litigation, such confidence is often misplaced."), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409 U.S. 363 (1973) (overturning $145 million judgment after years of appeals).

Courts recognize that "the purpose of a settlement is to avoid the expense and delay of a trial." *Petrovic*, 200 F.3d at 1149; *DeBoer*, 64 F.3d at 1176-78. Defendants have demonstrated a commitment to defend the case through and beyond trial, if necessary, and are represented by well-respected and highly capable counsel. If not for this settlement, the case would have been fiercely contested by all parties. The expense of continuing litigation would be substantial. A substantial amount of document and deposition discovery would be needed to prepare this case for trial. Document discovery and depositions would have involved a considerable expenditure of time and money. In addition, the parties would conduct expert discovery involving both the preparation of experts' reports and depositions of experts.

Inevitably, defendants would have filed motions for summary judgment. Lead Plaintiffs would have to expend a substantial amount of time and expense in responding to defendants' motions. Assuming Lead Plaintiffs' claims survived defendants' motions for summary judgment, a pre-trial order would have to be prepared, proposed jury instructions would have to be submitted and motions *in limine* would have to be filed and argued. Further, massive amounts of time and expense would have been expended in preparing the case for trial. The normal costs of litigation, including copying, travel, depositions, experts, computer support and other necessary support are quite high. In a complex case such as this, those expenses would impose a significant burden on any recovery obtained for the Settlement Class after trial and inevitable appeal.

Moreover, the trial of this litigation would have been long, expensive and uncertain and no matter what the outcome, appeals would be virtually assured. Taking into account

the likelihood of appeal, absent the settlement, this litigation likely would have continued for years against defendants, despite the best efforts of the Court and the parties to speed the process. *See In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 837 (W.D. Pa. 1995) ("It is safe to say, in a case of this complexity, end of that road might be miles and years away."). A trial would have occupied a number of attorneys on both sides for many weeks or months and would have required substantial expert testimony.

While Lead Plaintiffs' counsel are confident that Lead Plaintiffs would have ultimately prevailed on the merits, the incursion of additional and very substantial expense due to a trial would deplete any eventual recovery. Moreover, a judgment favorable to the Settlement Class would, in light of the highly contested nature of this case, unquestionably be the subject of post-trial motions and appeals, which could prolong the case for several more years. *See, e.g., Warner Communications*, 618 F. Supp. at 745 (delay from appeals is a factor to be considered). Therefore, delay – not just at the trial stage but through post-trial motions and the appellate process as well – could force members of the class to wait years for any recovery, further reducing its value. Worse, after a successful trial, plaintiffs could find their verdict for securities fraud reversed and judgment for the defendants ordered. *Robbins*, 116 F.3d 1441; *see also Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation). Accordingly, settlement of this litigation before significant additional resources have been expended by Lead Plaintiffs is in the best interest of the Settlement Class.

Moreover, the very essence of a settlement agreement is compromise, which requires an abandonment of the usual win versus loss philosophy in favor of a solution somewhere between the two extremes. *Holden*, 665 F. Supp. at 1413.

> "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation."

*Officers for Justice*, 688 F.2d at 624 (citation omitted); *see also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 19 (N.D. Cal. 1980) (as a *quid pro quo* for not having to undergo the uncertainties and expenses of litigation, the plaintiffs must be willing to moderate the measure of their demands), *aff'd*, 661 F.2d 939 (9th Cir. 1981). Even if the Settlement Class could have recovered a judgment larger than this settlement, a larger recovery would not necessarily be more valuable to the Settlement Class due to the decreasing value of money over time, the significant expense of further litigation, the collection risks, and the continuing risks of post-trial motions and appeals. *See Antibiotic Antitrust*, 410 F. Supp. at 664; *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993). Accordingly, the fact that the Settlement Class potentially might have achieved a larger recovery at trial is not dispositive and does not preclude the Court from finding that the settlement is within a "range of reasonableness" that is appropriate for approval. *See Warner Communications*, 618 F. Supp. at 745.

**B.   The Parties Have Engaged in Sufficient Pretrial Proceedings to Identify the Strengths and Weaknesses of Their Cases**

"The extent of discovery completed and the stage of the proceedings are important factors to consider because they are indicative of the counsel's and the Court's ability to evaluate the merits of plaintiffs' claims." *Employee Benefit Plans*, 1993 U.S. Dist. LEXIS

21226, at *19; *see also Welsch*, 667 F. Supp. at 1297; *Girsh*, 521 F.2d at 157; *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982); *Ellis*, 87 F.R.D. at 18; *Warner Communications*, 618 F. Supp. at 741. The Ninth Circuit recently reiterated "'in the context of class action settlements, "formal discovery is not a necessary ticket to the bargaining table" where the parties have sufficient information to make an informed decision about settlement.'" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

Lead Plaintiffs' counsel engaged in a substantial and ongoing investigation and analysis of the claims throughout the litigation. This investigation included interviewing over 30 former Stellent employees and consultation with experts in damages, materiality, loss causation and accounting. Although Stellent had not produced documents in discovery, certain third parties had. Moreover, as part of the settlement, Lead Plaintiffs required Stellent to produce certain documents under a confidentiality agreement, to permit them, in consultation with counsel, to confirm the fairness of the proposed settlement. In addition, the parties engaged in extensive briefing in connection with defendants' motion to dismiss, which further highlighted the factual and legal issues in the litigation. Therefore, Lead Plaintiffs and their counsel had sufficient information to permit them to carefully consider the adequacy of the settlement. Having sufficient information to properly evaluate the case, Lead Counsel managed to settle the litigation on terms highly favorable to the Settlement Class without the substantial expense, uncertainty and delay of continued litigation.

**C.     The Recommendations of Experienced Counsel Heavily Favor Approval of the Settlement**

Experienced counsel, negotiating at arm's length, have weighed the above-referenced factors and strongly endorse the settlement.  As this Court previously held: "[t]he Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *Employee Benefit Plans*, 1993 U.S. Dist. LEXIS 21226, at *17, *see also Antibiotic Antitrust*, 410 F. Supp. at 667; *Fisher Bros. v. Cambridge-Lee Indus.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); *accord Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); *Welsch*, 667 F. Supp. at 1295 (court entitled to rely on judgment of experienced counsel).

This action has been litigated by experienced and competent counsel on both sides of the case.  The law firms representing Lead Plaintiffs are well known for their experience and success in class action securities litigation.  Defense counsel also have an abundance of experience in this type of litigation.  That such qualified and well-informed counsel, operating at arm's length and after hard-fought settlement negotiations, endorse the settlement as being fair, reasonable and adequate to the Settlement Class heavily favors this Court's approval of the settlement.

**D.     The Reaction of the Settlement Class Supports Approval of the Settlement**

Notices explaining the settlement were sent to over 7,300 potential Settlement Class Members.[4] The time period for objecting to the settlement expired on October 28, 2005. As noted above, ***no objections to the settlement have been received***. The absence of any objections by Settlement Class Members is an important factor in evaluating the fairness of a settlement and supports approval of this settlement. *See Petrovic*, 200 F.3d at 1152 (approving settlement where "fewer than 4 percent of the class members objected to the settlement"); *Grinnell Corp.*, 495 F.2d at 463. As this Court previously concluded: "the lack of objection to the settlement indicates that the class members approve of it." *Employee Benefit Plans*, 1993 U.S. Dist. LEXIS 21226, at *18-*19.

For the reasons discussed above and set forth in the Herman Affidavit, the settlement is fair, reasonable and adequate and meets all applicable standards for approval.

**V.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE**

Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 of the Federal Rules of Civil Procedure is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair, reasonable and adequate. *See Ikon*, 194 F.R.D. at 184; *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992). District courts enjoy "broad supervisory powers over the administration of class-action

---

[4]     *See* paragraph 6 to the Affidavit of Christl Hansman Re A) Mailing of the Notice of Pendency and Proposed Settlement of Class Action, and the Proof of Claim and Release Form; and B) Publication of the Summary Notice, filed herewith.

settlements to allocate the proceeds among the claiming class members . . . equitably."
*Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig.*
*Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). An allocation formula need only have a
reasonable, rational basis, particularly if recommended by "experienced and competent"
class counsel. *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993); *In re Gulf Oil/Cities*
*Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).

The objective of a plan of allocation is to provide an equitable basis upon which to
distribute the settlement fund among eligible class members. Here, the Plan of Allocation,
described below, was formulated by plaintiffs' counsel with the assistance of their damages
experts and was developed to provide an equitable allocation of the Net Settlement Fund,
and represents an initial assessment of the damages that is not intended to (and does not)
reflect an exact method of calculating damages. The Plan of Allocation assesses the
individual Settlement Class Members' damages based on when they bought and sold their
shares and will result in a fair distribution of the available proceeds among those Settlement
Class Members who submit valid claims. The Plan of Allocation provides that a claim will
be calculated as follows:

### Common Stock

1.   *For shares of Stellent, Inc. common stock purchased from October 2, 2001*
*through March 11, 2002*, and

   (a)   sold prior to March 12, 2002, the claim per share is $0;

   (b)   sold between March 12, 2002 and March 19, 2002, the claim per share
is the lesser of:

      (i)      the purchase price less $5.888 (90-Day Average Closing Price),

or

      (ii)      $1.640 per share (March 12, 2002 Price Decline);

      (c)      sold between March 20, 2002 and April 1, 2002, the claim per share is the lesser of:

      (i)      the purchase price less $5.888 (90-Day Average Closing Price),

or

      (ii)      $5.360 per share (March 12, 2002 and March 20, 2002 Price Declines);

      (d)      retained at the end of April 1, 2002, the claim per share is the lesser of:

      (i)      the purchase price less $5.888 (90-Day Average Closing Price),

or

      (ii)      $5.990 per share (March 12, 2002, March 20, 2002 and April 2, 2002 Price Declines).

      2.      *For shares of Stellent, Inc. common stock purchased from March 12, 2002 through March 19, 2002*, and

      (a)      sold prior to March 20, 2002, the claim per share is $0;

      (b)      sold between March 20, 2002 and April 1, 2002, the claim per share is the lesser of:

      (i)      the purchase price less $5.888 (90-Day Average Closing Price),

or

      (ii)      $3.720 per share (March 20, 2002 Price Decline);

(c)     retained at the end of April 1, 2002, the claim per share is the lesser of:

(i)     the purchase price less $5.888 (90-Day Average Closing Price),

or

(ii)     $4.350 per share (March 20, 2002 and April 2, 2002 Price

Declines).

3.     *For shares of Stellent, Inc. common stock purchased from March 20, 2002*

*through April 1, 2002*, and

(a)     sold prior to April 2, 2002, the claim per share is $0;

(b)     retained at the end of April 1, 2002, the claim per share is the lesser of:

(i)     the purchase price less $5.888 (90-Day Average Closing Price),

or

(ii)     $0.630 per share (April 2, 2002 Price Decline).

### CALL OPTIONS

1.     *For call options on Stellent common stock that were **purchased** from October*

*2, 2001 through April 1, 2002*, and

(a)     *owned* at the end of one of the following dates: March 11, 2002, March

19, 2002 or April 1, 2002, the claim per call option is the difference between the price paid

for the call option less the proceeds received upon the settlement of the call option contract;

(b)     *not owned* at the end of one of the following dates: March 11, 2002,

March 19, 2002 or April 1, 2002, the claim per call option is $0.

2.     *For call options on Stellent common stock that were **written** from October 2,*

*2001 through April 1, 2002 , the claim per call option is $0.*

### *PUT OPTIONS*

1.       *For put options on Stellent common stock that were **written** from October 2, 2001 through April 1, 2002*, and

(a)       were the obligation of the writer at the end of one of the following dates: March 11, 2002, March 19, 2002 or April 1, 2002, the claim per put option is the difference between the price paid upon settlement of the put option contract less the initial proceeds received upon the sale of the put option contract;

(b)       were *not* the obligation of the writer at the end of one of the following dates: March 11, 2002, March 19, 2002 or April 1, 2002, the claim per put option is $0.

2.       *For put options on Stellent common stock that were **purchased** from October 2, 2001 through April 1, 2002 , the claim per put option is $0.*

Total Recovery for the options shall not exceed 5% of the Net Settlement Fund.

## VI.    CONCLUSION

The proposed settlement is an excellent result, given the additional expense if this litigation were to continue, the present benefit the settlement will provide to the Settlement Class, and the fact that the proposed settlement was the product of extensive arm's-length negotiations.  Lead Plaintiffs respectfully request the Court to approve the settlement of this litigation as well as the proposed Plan of Allocation as fair, reasonable and adequate.

DATED:  November 8, 2005          REINHARDT WENDORF & BLANCHFIELD
                                                         GARRETT D. BLANCHFIELD, JR (#209855)


                                                 _____
                                                         /s/ Garrett D. Blanchfield, Jr
                                                         GARRETT D. BLANCHFIELD, JR

- 22 -

E-1250 First National Bank Building
332 Minnesota Street
St. Paul, MN 55101
Telephone: 651/287-2100
651/287-2103 (fax)

Liaison Counsel

LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
REED R. KATHREIN
DENNIS J. HERMAN
MARIA V. MORRIS
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)

LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
JEFFREY D. LIGHT
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

LABATON SUCHAROW & RUDOFF LLP
CHRISTOPHER KELLER
LOUIS GOTTLIEB
100 Park Avenue, 12th Floor
New York, NY 10017-5563
Telephone: 212/907-0700
212/818-0477 (fax)

Attorneys for Lead Plaintiff David Mowbray

S:\Settlement\Stellent.set\BRF SETTLEMENT 00025700.doc

- 23 -